IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHAEL WAGNER, | ) | CIVIL NO. 09-00600 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION TO DISMISS |
| vs. | ) | PLAINTIFF'S CLAIM FOR |
| | ) | PUNITIVE DAMAGES FOR |
| KONA BLUE WATER FARMS, | ) | UNSEAWORTHINESS |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
CLAIM FOR PUNITIVE DAMAGES FOR UNSEAWORTHINESS**

**I.  INTRODUCTION**

On December 16, 2009, Plaintiff Michael Wagner ("Plaintiff") filed a

Complaint alleging maritime personal injury claims against his employer

Defendant Kona Blue Water Farms, LLC ("Defendant") for injuries he allegedly

incurred during the scope of his employment as a diver.  Plaintiff alleges a Jones

Act negligence claim, general maritime claims for unseaworthiness and

maintenance and cure, and a claim for vessel owner negligence.

Plaintiff seeks punitive damages, and currently before the court is

Defendant's Motion to Dismiss, which argues that as to Plaintiff's unseaworthiness

claim, punitive damages are not recoverable as a matter of law.  In opposition,

Plaintiff argues that *Evich v. Morris*, 819 F.2d 256 (9th Cir. 1987), permits

punitive damages for unseaworthiness.  For the following reasons, the court finds

that *Evich* remains binding on this court and therefore DENIES Defendant's

Motion to Dismiss.

## II.  BACKGROUND

Plaintiff alleges that in the course of his employment as a commercial

diver he suffered "repeated, severe, and permanently disabling barotrauma to his

ears resulting in bouts of severe vertigo, binaural hearing loss and tinnitus" as a

result of Defendant's negligence.  Compl. ¶ 9.  Plaintiff alleges that his cumulative

ear injuries have caused and will continue to cause him physical, mental, and

emotional pain and suffering.  *Id.*  Based on these allegations, Plaintiff alleges

Jones Act negligence (Count I), a general maritime claim for unseaworthiness

(Count II), a general maritime claim for maintenance and cure (Count III), and

vessel owner negligence (Count IV).

The Complaint seeks punitive damages on all claims.  Defendant

subsequently filed a Motion arguing that punitive damages are not recoverable

under a Jones Act negligence claim.  At a May 3, 2010 hearing, Plaintiff stated that

he is no longer seeking punitive damages on his maintenance and cure claim.  On

May 6, 2010, the court issued its Order Granting Defendant's Motion as to

2

Plaintiff's Jones Act claim (the "May 6 Order"), leaving Plaintiff's punitive

damages only as to his claims for unseaworthiness and vessel owner negligence.

On June 8, 2010, Defendant filed the present Motion seeking

dismissal of Plaintiff's request for punitive damages on unseaworthiness claim

pursuant to Federal Rule of Civil Procedure 12(f).  On June 23, 2010, Plaintiff filed

an Opposition.  No Reply was filed.  On August 4, 2010, the parties filed

simultaneous supplemental briefing.

After the May 6 Order and the briefing on Defendant's present

Motion, *Whittlestone, Inc. v. Handi-Craft Co.*,--- F.3d ---, 2010 WL 3222417, at

*3-4 (9th Cir. Aug. 17, 2010), held that Rule 12(f) "does not authorize a district

court to strike a claim for damages on the ground that such damages are precluded

as a matter of law," "because a Rule 12(b)(6) motion (or a motion for summary

judgment at a later stage in the proceedings) already serves such a purpose."

Accordingly, the parties stipulated that both Defendant's prior Motion and present

Motion are amended to be deemed brought pursuant to Rule 12(b)(6) instead of

Rule 12(f).  *See* Doc. No. 42.  The court therefore withdrew the May 6 Order and

reissued its Order under the Rule 12(b)(6) standard (the "Jones Act Punitive

Damages Order").  In this Order, the court addresses Defendant's Motion seeking

dismissal of Plaintiff's claim for punitive damages on the unseaworthiness claim

3

pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Id.* at 1950.

---

[1]  Pursuant to Local Rule 7.2, the court finds this matter suitable for disposition without a hearing.

# IV. <u>ANALYSIS</u>

At issue is whether *Evich*, 819 F.2d at 258 -- which permitted the recovery of punitive damages in unseaworthiness actions -- remains good law. Defendant contends that *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), prohibits recovery of punitive damages for unseaworthiness and that *Evich* is not binding on this court because its holding is clearly irreconcilable with *Miles*.  Plaintiff responds that *Miles*, as clarified by *Atlantic Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009), leaves *Evich* intact.  The court examines these three cases and their contexts below, and based on the following, finds that *Evich* remains binding precedent.

## A.     **Unseaworthiness Actions and *Evich***

The admiralty doctrine of unseaworthiness is a form of strict liability that requires the owner of a vessel to ensure that a vessel and its appurtenant equipment and appliances are "reasonably fit for her intended service."  *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971); *see also Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 90 (1946).  Although the origins of the unseaworthiness doctrine are "perhaps unascertainable," *Sieracki*, 328 U.S. at 91, the doctrine likely developed from the seaman's right to abandon an improperly fitted vessel.  *Arizona v. Anelich*, 298 U.S. 110, 121, n.2 (1936).  The doctrine appears to have been

5

established in the late nineteenth century as a response to the increased danger

seamen faced aboard more modern vessels.  *See Sieracki*, 328 U.S. at 92 n.9

("With the advent of steam navigation, however, it was realized . . . that

'maintenance and cure' did not afford to injured seamen adequate compensation in

all cases for injuries sustained." (citing *The State of Maryland*, 85 F.2d 944, 945

(4th Cir. 1936))); *see also Mahnich v. S. S.S. Co.*, 321 U.S. 96, 99 (1944)

("[Unseaworthiness] was generally applied, before its statement in [*The Osceola*,

189 U.S. 158, 171 (1903),] by numerous decisions of the lower federal courts

during the last century."); *The Edith Godden*, 23 F. 43, 46 (D.C.N.Y. 1885).  *But*

*see Usner*, 400 U.S. at 497 ("[Unseaworthiness arose] from its humble origin as a

dictum in an obscure case in 1922 . . . ." (citing *Carlisle Packing Co. v. Sandanger*,

259 U.S. 255 (1922))); *Sieracki*, 328 U.S. at 104 (Stone, C.J., dissenting)

("[I]ndemnity for injuries resulting from unseaworthiness was first recognized by

this Court in *The Osceola*.").

       *Evich* held that "[p]unitive damages are available under general

maritime law for claims of unseaworthiness."  *Evich*, 819 F.2d at 258.  *Evich*

explained that "[p]unitive damages serve the purposes of punishing the defendant,

of teaching him not to do it again, and of deterring others from following his

example.  These purposes support their availability in general maritime law . . . ."

*Id.* (citations and quotations omitted).  *Evich* further reasoned that "[w]hile

punitive damages are not available under the Jones Act, it does not follow that they

are unavailable under general maritime law."  *Id.* (citations omitted).

**B.     The Availability of Punitive Damages Following *Miles***

Defendant contends that despite *Evich*, punitive damages are

unavailable as a result of *Miles*.  *Miles* held that the family of a seaman could not

recover damages for loss of society in a wrongful death action brought as either a

Jones Act claim or a general maritime law unseaworthiness claim.

In reaching this conclusion, *Miles* first established that non-pecuniary

damages were prohibited under the Jones Act.  The Jones Act "makes applicable to

seamen the substantive recovery provisions of the older [Federal Employers'

Liability Act ("FELA")]."[2]  *Miles*, 498 U.S. at 32.  Before the passage of the Jones

Act, the Supreme Court prohibited the recovery of non-pecuniary damages under

FELA.  *Id.* (citing *Mich. Cent. R.R. Co. v. Vreeland*, 227 U.S. 59, 71-72 (1913));

---

[2]  Specifically, the Jones Act provides:

> A seaman injured in the course of employment or, if the seaman
> dies from the injury, the personal representative of the seaman may
> elect to bring a civil action at law, with the right of trial by jury,
> against the employer.  Laws of the United States regulating
> recovery for personal injury to, or death of, a railway employee
> apply to an action under this section.

46 U.S.C. § 30104 (modified for clarity in 2006).

*see also Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 203 (1st Cir. 1994) (citing *N.Y. Cent. & H.R.R. Co. v. Tonsellito*, 244 U.S. 360, 361 (1917)).  *Miles* reasoned that "[i]ncorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well.  We assume that Congress is aware of existing law when it passes legislation."  *Miles*, 498 U.S. at 32.  Thus, the Court found that the families of seamen could not recover damages for loss of society -- which the Court found were non-pecuniary -- under the Jones Act.

Miles then extended the Jones Act prohibition on non-pecuniary damages to general maritime law wrongful death actions:

> It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence.  We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

*Id.* at 32-33.  The Court further noted that "[m]aritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them.  Congress has placed limits on recovery in survival actions that we cannot exceed."  *Id.* at 36.

Prior to *Townsend* -- discussed in detail below -- courts uniformly

8

interpreted *Miles* as precluding the recovery of punitive damages in Jones Act

claims.  *See*, *e.g.*, *Guevara v. Mar. Overseas Corp.*, 34 F.3d 1279 (5th Cir. 1994),

*abrogated by Townsend*, 129 S. Ct. 2561 (2009); *Horsley*, 15 F.3d at 202-03;

*Miller v. Am. President Lines*, *Ltd.*, 989 F.2d 1450, 1454-59 (6th Cir. 1993);

*Anderson v. Texaco, Inc.*, 797 F. Supp. 531, 534 (E.D. La. 1992) ("[T]he

post-*Miles* district court cases, in this district and in others, speak with one voice in

concluding that punitive damages are nonpecuniary and, therefore, are not

recoverable under *Miles*'s interpretation of the Jones Act.") (citing cases).  As the

court explained in its Jones Act Punitive Damages Order, however, *Townsend*'s

examination of *Miles* suggests that *Miles* may not preclude the recovery of punitive

damages in Jones Act claims.  *See Townsend*, 129 S. Ct. at 2575 n.12 (declining to

address whether punitive damages are recoverable in Jones Act negligence claims).

Additionally, although *Miles* did not address punitive damages, pre-

*Townsend* courts also universally interpreted *Miles* to preclude punitive damages

awards in unseaworthiness actions.  *Horsley*, 15 F.3d at 203; *see also Guevara*, 34

F.3d at 1284 ("The courts which have held that punitive damages are unavailable

in a cause of action for unseaworthiness have reasoned that, because punitive

damages are unavailable under the Jones Act . . . it would run counter to *Miles* to

allow punitive damages under general maritime law."); *Miller*, 989 F.2d at 1459

9

(denying punitive damages in a wrongful death action alleging unseaworthiness);

*La Voie v. Kualoa Ranch & Activity Club, Inc.*, 797 F. Supp. 827, 831 (D. Haw.

1992) (rejecting the availability of punitive damages for an unseaworthiness claim

and reasoning that allowing punitive damages "would be contrary to . . . *Miles*").

Relying on *Miles*, these opinions reasoned that unseaworthiness is a judicially

created remedy, and, therefore, it would be "inconsistent with [our] place in the

constitutional scheme" to allow non-pecuniary remedies in any unseaworthiness

actions.  *Horsley*, 15 F.3d at 201-03.

## C.      Recent Legal Framework Regarding Punitive Damages

Two recent Supreme Court decisions draw into question whether the

lower courts have correctly interpreted *Miles*.

First, the Supreme Court considered punitive damages in the maritime

context in *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2626 (2008), where it

upheld a punitive damages award based solely on federal maritime common law.

*Baker* did not address the rights of seamen -- instead, the Court upheld a jury's

punitive damage award for commercial fishermen and native Alaskans who

suffered economic losses following the 1989 Exxon oil spill off the coast of

Alaska.  The Court found that *Miles* did not present a bar to such a punitive award:

> To be sure, "Congress retains superior authority in these
> matters," and "[i]n this era, an admiralty court should

> look primarily to these legislative enactments for policy
> guidance." [*Miles*, 498 U.S. at 27].  But we may not
> slough off our responsibilities for common law remedies
> because Congress has not made a first move, and the
> absence of federal legislation constraining punitive
> damages does not imply a congressional decision that
> there should be no quantified rule.

*Baker*, 128 S. Ct. at 2630 n.21 (some citations omitted).

Next, in *Townsend*, the Court held that a seamen, as a matter of general maritime law, could seek punitive damages in a maintenance and cure claim.  *Townsend*, 129 S. Ct. at 2565.  In so holding, the Court found that *Miles* does not limit a seaman's recovery to only those damages available by statute.  The Court explained, "[h]istorically, punitive damages have been available and awarded in general maritime actions, including some in maintenance and cure.  We find that nothing in *Miles* or the Jones Act eliminates that availability."  *Id*.  The Court first established three "settled legal principles":

> First, punitive damages have long been available at
> common law.  Second, the common-law tradition of
> punitive damages extends to maritime claims.  And third,
> there is no evidence that claims for maintenance and cure
> were excluded from this general admiralty rule.  Instead,
> the pre-Jones Act evidence indicates that punitive
> damages remain available for such claims under the
> appropriate factual circumstances.

*Id*. at 2569.  The Court then examined the Jones Act to determine if it overturned the common law rule permitting recovery of punitive damages.

*Townsend* concluded that the Jones Act does not preclude a seaman's recovery of punitive damages in a maintenance and cure action.  The Court found that the Jones Act "created a statutory cause of action for negligence, but it did not eliminate pre-existing remedies available to seamen . . . ."  *Id*. at 2570.  The Jones Act is therefore "not an exclusive remedy" and it "necessarily follows that Congress was envisioning the continued availability of those common law causes of action [available under general maritime law]."  *Id*.  The purpose of the Jones Act "'was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty.  Its purpose was to enlarge that protection, not to narrow it.'"  *Id*. (quoting *The Arizona v. Anelich*, 298 U.S. 110, 123 (1936)) (additional citations omitted).

*Townsend* also clarified how courts should interpret *Miles*.  The *Townsend* petitioners argued that *Miles* limits recovery in maritime cases involving death or personal injury to the remedies available by statute.  The Court found this reading of *Miles* "far too broad."  *Id*. at 2572.  *Townsend* explained that *Miles* grapples with the question "whether general maritime law should provide a cause of action" where a federal statute has "displaced a general maritime rule."  *Id*.  As set forth in *Townsend*, *Miles* concluded first, that the Jones Act "supported the recognition of a general maritime action for wrongful death of a seaman" and

12

second, "that Congress' judgment must control the availability of remedies for wrongful-death actions brought under general maritime law." *Id.* (citing *Miles*, 498 U.S. at 21, 24, 32-36). *Townsend* concluded that "[t]he reasoning of *Miles* remains sound." *Id.*

The Court explained that *Miles* does not preclude the recovery of punitive damages in general maritime law maintenance and cure actions. First, "unlike the situation presented in *Miles*, both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act." *Id.* Second, the "Jones Act does not address maintenance and cure or its remedy." *Id.* Although "seamen commonly seek to recover under the Jones Act for the wrongful withholding of maintenance and cure," that fact "does not mean that the Jones Act provides the only remedy for maintenance and cure claims." *Id.* at 2574. Finally, *Townsend* compared maintenance and cure actions with negligence actions:

> Like negligence, the general maritime law has recognized
> . . . for more than a century the duty of maintenance and
> cure and the general availability of punitive damages.
> And because respondent does not ask this Court to alter
> statutory text or 'expand' the general principles of
> maritime tort law, *Miles* does not require us to eliminate
> the general maritime remedy of punitive damages for the
> willful or wanton failure to comply with the duty to pay
> maintenance and cure. We assume that Congress is
> aware of existing law when it passes legislation, and the

13

> available history suggests that punitive damages were an
> established part of the maritime law in 1920.

*Id*. at 2573 (citation and quotations omitted).

**D.    Application**

The court must determine whether *Evich*'s holding that punitive damages are available under general maritime law for claims of unseaworthiness remains binding on this court following *Miles*, *Baker*, and *Townsend*.  To be clear, the court does not determine how it would decide this case as a matter of first impression -- *Evich* is binding on this court unless it has been directly overruled or its holding is clearly irreconcilable with those decisions.[3]  *See Miller v. Gammie*, , 900 (9th Cir. 2003) ("We hold that the issues decided by the higher court need not be identical in order to be controlling. . . . In [] cases of such clear irreconcilability, . . . district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.").

The court concludes that in light of *Townsend*'s examination of *Miles*,

---

[3] Clearly, the Supreme Court has not directly overruled *Evich*.  *Miles* considered only damages for loss of society -- it did not address punitive damages.  Both *Baker* and *Townsend* in turn permitted punitive damages awards based on federal maritime common law.  As a result, no intervening higher authority has directly overruled *Evich*'s holding that "[p]unitive damages are available under general maritime law for claims of unseaworthiness."  *Evich v. Morris*, 819 F.2d 256, 258 (9th Cir. 1987).

14

*Evich* is not clearly irreconcilable with *Miles*. *Townsend* explained that *Miles* limits available remedies to those prescribed by Congress when a federal statute has created a maritime claim or "displaced a general maritime rule." *Townsend*, 129 S. Ct. 2572. *Townsend* further explained that *Miles* did not preclude an award of punitive damages in a maintenance and cure claim because "both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act" and "unlike the facts presented by *Miles*, the Jones Act does not address maintenance and cure or its remedy." *Id.* at 2572-73.

Here, as in *Townsend*, there is no suggestion that a federal statute has displaced the general maritime rule concerning unseaworthiness. Unseaworthiness is a general maritime cause of action that was well established before the passage of the Jones Act. *Sieracki*, 328 U.S. at 91, 92 n.9; *Mahnich*, 321 U.S. at 99. Additionally, punitive damages were well established as a remedy in general maritime law actions before the passage of the Jones Act. *Townsend*, 129 S. Ct. 2566-69, 2572 (discussing the history of punitive damages and the extension of punitive damages to claims arising under federal maritime law) (citing *Lake Shore & Mich. S. R. Co. Ry. Co. v. Prentice*, 147 U.S. 101, 108 (1893); *The Amiable*

*Nancy*, 3 Wheat. 546 (1818)) (additional citations and quotations omitted).[4]

Finally, unlike the wrongful death claim at issue in *Miles*, the Jones

Act did not address unseaworthiness or its remedy.

> [Unseaworthiness] is a remedy separate from,
> independent of, and additional to other claims against the
> shipowner, whether created by statute or under general
> maritime law.  More specifically, the Court has
> repeatedly taken pains to point out that liability based
> upon unseaworthiness is wholly distinct from liability
> based upon negligence.  The reason, of course, is that
> unseaworthiness is a condition, and how that condition
> came into being -- whether by negligence or otherwise --
> is quite irrelevant to the owner's liability for personal
> injuries resulting from it.

*Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498 (1971) (citations

omitted); *see also Miles*, 498 U.S. at 29 ("The Jones Act evinces no general

hostility to recovery under maritime law.  It does not disturb seamen's general

---

[4] On July 28, 2010, the court requested simultaneous supplemental briefing on the issue of whether punitive damages were available in unseaworthiness actions before the passage of the Jones Act in 1920.  Despite submitting well-researched briefs, neither party persuasively answered the court's inquiry.  The court agrees with Plaintiff, however, that *Evich* is not inconsistent with *Miles* even if punitive damages had not been awarded for unseaworthiness prior to the passage of the Jones Act.  Pl.'s Suppl. Mem. at 9.  *Townsend* determined that punitive damages are available in maintenance and cure claims *not* because the Court found clear historical evidence of punitive damage awards being given for maintenance and cure violations, but instead because (1) "punitive damages were available at common law" and (2) "[n]othing in maritime law undermines the applicability of this general rule in the maintenance and cure context."  *Atlantic Sounding Co. v. Townsend*, 129 S. Ct. 2561, 2567-68 (2009).  Likewise, here, the court reiterates *Townsend*'s conclusion that "punitive damages were available at common law," *id.* at 2567, and finds that nothing in maritime law undermines the applicability of this general rule in the unseaworthiness context.

maritime claims for injuries resulting from unseaworthiness."); *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (referring to the Jones Act, unseaworthiness, and maintenance and cure as the "trilogy" of legal protections available to seamen). *But see Guevara*, 34 F.3d at 1284 (suggesting that maintenance and cure actions are more easily distinguished from *Miles* than unseaworthiness actions); David W. Robertson, *Punitive Damages in U.S. Maritime Law:* Miles*,* Baker*, and* Townsend, 70 La. L. Rev. 463, 464 (2010) ("Historically, conceptually, and functionally, the unseaworthiness and Jones Act tort actions are 'Siamese twins.'  The much older maintenance and cure action does not derive from tort principles and is something like a first cousin to the other two.").

Thus, although cases predating *Townsend* consistently interpreted *Miles* to bar punitive damages for general maritime law claims including unseaworthiness, *e.g. Guevara*, 34 F.3d at 1284; *La Voie*, 797 F. Supp. at 831, *Townsend* suggests that such interpretations of *Miles* are "far too broad." *Townsend*, 129 S. Ct. at 2572.  Specifically, *Townsend* held that *Miles* does not limit recovery in general maritime actions to the remedies available by statute.  *Id*. *Townsend* therefore reinforces *Evich*'s conclusion that "[w]hile punitive damages are not available under the Jones Act, it does not follow that they are unavailable under general maritime law." *Evich*, 819 F.2d at 258.  Accordingly, the court finds

17

that *Evich* is not clearly irreconcilable with *Miles*.

In opposition, Defendant contends that *Townsend* is inapposite because unlike maintenance and cure, unseaworthiness did not exist in its modern form until well after the passage of the Jones Act.  Specifically, Defendant contends that *Mahnich v. S. S. S. Co.*, 321 U.S. 94 (1944), "transformed" unseaworthiness into a strict liability doctrine.  *See Miles*, 498 U.S. at 325 (discussing the history of unseaworthiness).  *Mahnich* suggests, however, that unseaworthiness may have been a strict liability doctrine since 1903:

> [T]he admiralty rule that the vessel and owner are liable to indemnify a seaman for injury caused by unseaworthiness of the vessel or its appurtenant appliances and equipment, has been the settled law since this Court's ruling to that effect in *The Osceola* [in 1903]
>  . . . .
>
> In a number of cases in the federal courts, decided before *The Osceola*, the right of the seaman to recover for injuries caused by unseaworthiness seems to have been rested on the negligent failure, usually by the seaman's officers or fellow seamen, to supply seaworthy appliances.  But later cases in this and other federal courts have followed the ruling of *The Osceola* that the exercise of due diligence does not relieve the owner of his obligation to the seaman to furnish adequate appliances.

*Mahnich*, 321 U.S. at 99-100 (citations omitted); *see also Carlisle Packing Co.*, 259 U.S. at 259 (holding that a trial court could properly have instructed a jury

18

"that without regard to negligence the vessel was unseaworthy when she left the dock if the can marked 'coal oil' contained gasoline; also that she was unseaworthy if no life preservers were then on board") (citations omitted).  Further, even assuming that the unseaworthiness doctrine was "transformed" in 1944, *Evich* is still not clearly irreconcilable with *Miles* because unseaworthiness, unlike wrongful death, is nevertheless a general maritime law creation and not a product of a statute.  *See Townsend*, 129 S. Ct. at 2572 (distinguishing maintenance and cure from wrongful death actions because Congress created a claim for wrongful death).

Defendant also argues that *Townsend* is inapplicable because, unlike maintenance and cure claims, *Miles* "directly address[ed] the damages available under the judicially created unseaworthiness remedy."  Def.'s Supplemental Mem. at 8.  Defendant ignores *Miles*' statement that "[t]he Jones Act . . . does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness." *Miles*, 489 U.S. at 29.  *Miles* "directly addressed" not unseaworthiness, but the general maritime law wrongful death actions created by *Morgane*.  *Id*. at 33 ("We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman."); *see also Townsend*, 129 S. Ct. at 2572-73 ("[U]nlike the facts presented by *Miles*, the Jones Act does not address maintenance and cure or its remedy.  It is therefore possible to adhere to

19

the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act.") (citations omitted).  Defendant's argument that *Miles* directly addressed the question now at issue is therefore unpersuasive.

In sum, the court finds that *Evich* remains binding on this court.  As a result, "[p]unitive damages are available under general maritime law for claims of unseaworthiness."  *Evich*, 819 F.2d at 258.

## V.  <u>CONCLUSION</u>

Based on the above, the court DENIES Defendant's Motion to Dismiss Plaintiff's Claim for Punitive Damages for Unseaworthiness.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 13, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Wagner v. Kona Blue Water Farms, LLC*, Civ. No. 09-00600 JMS/BMK, Order Denying Defendant's Motion to Dismiss Claim for Punitive Damages for Unseaworthiness